306 So.2d 910 (1974)
Gayle Wayne FOSTER
v.
Bruce M. BARKER.
No. 10060.
Court of Appeal of Louisiana, First Circuit.
December 16, 1974.
Rehearing Denied February 10, 1975.
*911 Robert L. Kleinpeter, Baton Rouge, for appellant.
James R. Coxe, III, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
BLANCHE, Judge.
Defendant-appellant, Bruce M. Barker, appeals from an adverse judgment of the trial court ordering him to pay to plaintiff-appellee, Gayle Wayne Foster, $4,026.06, plus legal interest from date of judicial demand until paid, all costs of court and $150 in expert witness fees. Plaintiff answered the appeal, seeking an increase in general damages from $2,500 to $10,000 and also the sum of $1,500 for loss of earnings. We affirm the decision of the trial court.
The incident giving rise to this suit occurred on October 20, 1973, at defendant's apartment in Baton Rouge, Louisiana. The testimony reflects that plaintiff arrived at defendant's apartment at approximately midnight on the twentieth in search of his girl friend, Jimmie Rose Hart, after a friend told him of her presence there. When plaintiff gained admittance to the apartment, he discovered Miss Hart and the defendant in matching blue pajamas. An argument then ensued between the plaintiff and defendant, with the plaintiff making certain derogatory remarks concerning the defendant's alleged sexual proclivities. Plaintiff further threatened the defendant, stating that he would break his neck and also boasting that if the defendant went for his gun he would break his bones. Thereafter, defendant did, in fact, go into the bedroom, which was located only a few feet away from where plaintiff was standing, obtained a 32-caliber pistol, and shot the plaintiff.
Although the facts are somewhat in conflict, it appears that this first shot was fired by defendant when plaintiff was only a few feet away and that the bullet struck plaintiff in the right arm, penetrated the chest and lodged in the back. Defendant contends plaintiff provoked the shot by raising his arms as if to strike defendant or take the gun away, as plaintiff had threatened to do. Plaintiff contends, however, that he was not striking at defendant but simply threw his hands in the air in an *912 attempt to defend himself. After the first shot, plaintiff ran from the apartment, with the defendant in close pursuit. When plaintiff reached a point just outside the door of the apartment, the defendant shot plaintiff a second time in the back, and plaintiff was knocked against a parked car. Defendant continued chasing plaintiff across the apartment complex until plaintiff finally collapsed.
It is conclusive that the incident that took place in the apartment lasted but a few moments, and there was only a short interval between the first and second shots. Defendant telephoned the police and plaintiff was rushed to the hospital where he remained for four and a half days. According to expert testimony, plaintiff recovered fully within approximately four months. However, both bullets remain in plaintiff's body. The second one, lodged superficially, could be easily removed.
The trial judge, in rendering judgment in favor of plaintiff, found as a fact that "no overt physical act" was taken toward the defendant and further found that mere words, even though intended to incite or irritate, cannot justify a battery, citing Morneau v. American Oil Company, 272 So.2d 313 (1973); Squyres v. Phillips, 285 So.2d 337 (La.App. 3rd Cir. 1973). The trial judge's statement of the law is correct and supported by the foregoing cases.
Defendant does not quarrel with the cases relied upon by the trial judge but contends that his factual findings are in conflict with the evidence. He claims that plaintiff created a tense situation by his presence and demeanor in defendant's apartment and that plaintiff committed an overt physical act toward the defendant by raising his right hand as if to strike at or grab the defendant (a fact which plaintiff denies), and under these circumstances the defendant was justified in retaliating with a dangerous weapon. In support of his position, defendant cites McCullough v. McAnelly, 248 So.2d 7 (La.App. 1st Cir. 1971).
In McAnelly, supra, this Court found that certain youths were out looking for trouble and deliberately set out to intimidate and terrorize the McAnelly family. The majority also found that it was reasonable for McAnelly to believe that he or his family was in immediate danger of death or bodily harm and that he was justified in using reasonable force (a dangerous weapon) in order to repel an attack on his son. In so holding the Court quoted the following pertinent judicial declarations:
"`Of course, resort to the use of a dangerous weapon in order to repel a supposed attack upon a defendant's person or that of persons to whom he owes a duty to protect cannot be countenanced as justifiable save in exceptional cases where the actor's fear of the danger is not only genuine but is founded on facts which would be likely to produce similar emotions in men of reasonable prudence.' Patterson v. Kuntz, 28 So.2d 278 (Orl. La.App. 1946).
`For the privilege of self-defense to exist, it is not necessary that the danger actually exist. It is only necessary that the actor have grounds which would lead an ordinary reasonable man to believe it exists, and that he so believe. All the facts and circumstances are to be taken into account to determine the reasonableness of the belief.' Pearson v. Taylor, 116 So.2d 833 (La.App. 2 Cir. 1959)." (McCullough v. McAnelly, 248 So.2d 7, 10)
We find no such "exceptional case" as the majority found in McCullough. Each case depends on its own peculiar facts and circumstances, and the evidence must be relied upon to determine the aggressor and whether more force than necessary was used to repel the aggression, Assuming arguendo that the trial judge *913 was in error in finding that plaintiff committed no overt physical act toward the defendant, there is not a scintilla of evidence in the record to justify the defendant's use of a dangerous weapon. It was only after the defendant appeared with gun in hand that plaintiff raised his arms, and we believe the trial judge's conclusion is correct that such conduct did not constitute an overt act of aggression toward defendant. Additionally, it is to be noted that when the plaintiff ran, after the first shot was fired, the defendant pursued him and shot him again. The trial judge was correct in finding a lack of justification for defendant's use of a dangerous weapon.
Plaintiff answered the appeal, seeking an increase in the award of general damages by the trial judge. He also assigns as error the trial judge's failure to award him loss of wages in the sum of $1,500. The trial judge, in Oral Reasons for Judgment, stated:
"Now, we note that the plaintiff in this suit incurred past medical expenses totaling $1,476.06. Future medical expense of $50.00 is proven. There is testimony to the effect that he lost approximately ten weeks wages, which according to the plaintiff was to the extent of approximately $150.00 per week, plus commissions. We also note that the gunshot wounds, the pain and suffering resulting from those gunshot wounds, and the additional future hospital medical which will be necessary for the removal of the bullet, would also constitute damages for which this Court would normally award the sum of five or six thousand dollars. Future hospital expenses were not, however, proven. While an award for these other items would normally be in order, we believe that the provocation, the verbal abuse and the action of the plaintiff in this case certainly should be held against him in mitigation of the damages. For those reasons we refuse to award the loss of wages in this case and we're going to cut the award for personal injuries down to the sum of $2,500.00." (Oral Reasons for Judgment, Record, pp. 42, 43)
From our review of the evidence, we concur in the finding that the plaintiff went to defendant's apartment and verbally abused him and threatened him with physical harm. In other words, he went there looking for trouble and found it. The trial judge was, therefore, justified both in law and fact in mitigating damages.
In Moore v. Blanchard, 216 La. 253, 43 So.2d 599 (1949), the Court reviewed the question of when surrounding circumstances may be shown to mitigate damages in assault and battery cases, quoting extensively from 4 American Jurisprudence, verbo Assault and Battery, and noting the Louisiana jurisprudence in which compensatory damages were mitigated by reason of provocation or fault shown on the part of the plaintiffs.
In Morneau, cited supra, the Supreme Court noted the rule of law that words which are calculated to provoke and arouse to the point of physical retaliation may mitigate damages in a civil action but found that the words used by the plaintiff in that case were insufficient to merit any mitigation of damages.
In Squyres, supra, the Third Circuit Court of Appeal recognized this rule of law.
For the foregoing reasons, the judgment of the trial court is affirmed, at the cost of defendant-appellant.
Affirmed.