214 So.2d 212 (1968)
Warren ALBERT
v.
J. & L. ENGINEERING COMPANY, Inc., and the Travelers Insurance Company.
No. 3135.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1968.
Rehearing Denied October 7, 1968.
Levy, Smith & Pailet, Adolph J. Levy, Jack Peebles, New Orleans, for plaintiff-appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Allain & Rogers, Jeanerette, Robert J. Vandaworker, Baton Rouge, for defendants-appellees.
Before REGAN, YARRUT, and BARNETTE, JJ.
REGAN, Judge.
The plaintiff, Warren Albert, filed this suit against the defendants, J. & L. Engineering Company, Inc., and its liability insurer, the Travelers Indemnity Company, in an endeavor to recover the sum of $93,093.54, representing damages which he asserts he incurred as the result of the negligent design of a sugarcane harvesting machine manufactured by the principal defendant.
The defendants answered and denied the existence of any negligence or defect in the design or manufacture of the machine, and in the alternative, they pleaded the contributory negligence of the plaintiff.
After an extensive trial on the merits, the lower court rendered judgment in favor of the defendants, dismissing the plaintiff's suit. From that judgment, the plaintiff has prosecuted this appeal.
This case was consolidated for trial with a suit by the plaintiff against his employer and his compensation insurer, endeavoring to recover workmen's compensation. Judgment was rendered in favor of the plaintiff in the compensation suit, but this aspect *213 of the litigation is not before us since no appeal was taken from that judgment.
The trial judge made a thorough analysis of this case in his written reasons for judgment, which in our opinion fully encompasses both the facts and the law posed for our consideration and the result which we have agreed should be reached.
"These consolidated matters originated with the institution of suit no. 9454 on May 5, 1964. This was a workmen's compensation proceeding wherein benefits for total permanent disability together with penalties and attorney fees were sought arising out of an accident which occurred on November 19, 1963 when petitioner, while cleaning a sugar cane cutting machine, caught his right thumb and index finger between the drive chain and sprocket resulting in an amputation of the right thumb about ¾ inches distal to the metacarpophalyngeal and amputation of the right inlex finger about ½ inch distal to the proximal interphalyngeal joint. Joined as defendants in this action were Robert E. Roussel, the petitioner's employer and owner of the machine, and the Allstate Insurance Company, the latter's alleged insurer. Subsequently, by way of supplemental and amending [amended] petition, an alternative course [cause] of action in tort was set forth wherein the plaintiff sought the sum of $43,093.54 as damages. A motion for summary judgment filed by the Allstate Insurance Company as to both the original and supplemental petitions was heard and sustained. Subsequently, on November 8, 1965, another supplemental and amending [amended] petition was filed wherein the amount sought in the alternative tort claim was increased to the amount of $93,093.54.
"Suit no. 9521 was filed by the plaintiff on November 12, 1964 against the J. & L. Engineering Company, Inc., the manufacturer of the cane cutting machine, and its liability insurer, The Travelers Indemnity Company. In this action it was alleged that the accident was the result of a breach of warranty on the part of the manufacturer, the harvester not being mechanically fit and designed for the use for which it was manufactured, or, alternatively, that the J. & L. Engineering Company, Inc. was negligent in the design and construction of the machine. By motion and order filed on February 9, 1965 this suit and suit no. 9454 were consolidated for trial. By supplemental petition filed on May 6, 1966 it was alleged that the harvester was in a defective condition unreasonably dangerous to the user and that, therefore, the defendant manufacturer was strictly liable to plaintiff even if no negligence were proved. The original petition sought damages in the amount of $43,093.54; as pointed out above, the supplemental petition filed on November 8, 1965 in both matters increased the demand to the sum of $93,093.54.
"Trial on the merits was held and the matter has been submitted on briefs.
The Question of Liability with Respect to the J. & L. Engineering Company, Inc. and The Travelers Insurance Company
"The plaintiff in this case was injured when his right thumb and index finger were caught between a chain and sprocket of a Model S-1000 Cane Master sugar cane harvester manufactured and sold by the defendant J. & L. Engineering Company, Inc. Counsel for plaintiff contend now in brief that the latter and its insurer are liable for plaintiff's injuries for two reasons; one, J. & L.'s failure to place warning signs at appropriate places on the machine, and, the other, failure on the part of J. & L. to install guards at the proper places.
"Mr. Joseph L. Pugh, now deceased, a pioneer researcher and developer of the sugar cane harvesters gave most valuable and interesting testimony with regard to the problems inherent in the harvesting of sugar cane by mechanical methods *214 and the development and operation of this machine manufactured by his company which is now in use throughout the sugar producing areas of the world. Throughout his testimony this gentleman stressed time and time again the fact that the accumulation of trash was the biggest problem in connection with the operation of a harvester and this was agreed to by Mr. Graugnard, who was called on behalf of the plaintiff. (See N.E. page 330). The following is illustrative of Mr. Pugh's testimony:
"A Sugar cane is a very trashy and dirty commodity. Cane is cut with all these leaves and trashy matter on it, and the harvester, after it does this job of cutting, it dislodges a lot of this leafy matter and it accumulates on the machine.' (N.E. page 55)
"Q Now, are those guards over the moving parts of the Cane Master harvester?
A No. Those chains perform the basic functions of the machinery; you cannot guard them. If you would it would make the machine inoperable. (N.E. page 51)
Q Now, if the chains of the cane harvester were covered, what effect would that have on the operation of the cane harvester?
A It would not cut cane. The chains have to be exposed for it to perform its functions.
Q That includes both conveying and cutting, is that right?
A Yes.' (N.E. pages 56 and 57)
"For the above reasons, obviously, a J. & L. Cane Master sugar cane harvester presents, to use the words of its counsel, a `skeletonized' appearance. Indeed, there is a veritable profusion of exposed wheels, levers, sprockets and chains that are highly noticeable to anyone coming near the machine for the first time. Not only are the chains visible but (and the Court knows this from personal experience) when put in motion they make a very distinctive and noticable noise. Mr. Pugh referred to the chains as being `quite noisy.' (N.E. page 267)
"The law in the State of Louisiana with respect to the duty of a manufacturer to warn is set forth in the case of Singleton vs. Olin Mathieson Chemical Corporation, 131 So.2d 329, wherein the Court, at page 334, held:
"* * * Here the danger was obvious as stated above. Therefore, we hold that where the consequences of improper usage are such that they will be readily cognizable there is no duty to warn of the particular consequences that may flow therefrom.'
"Stated another way, the law appears to be simply that a duty to warn is imposed on the manufacturer only when there is a hidden danger not obvious to one using the product. Here there was no hidden danger involved but an open and obvious one just as are a chain and sprocket on a bicycle, the turning blades of a fan or the whirling blades of a reel type lawn mower. Why Albert placed his hand where he did lies peculiarly within his own knowledge; the danger was perfectly obvious to him, however, and the Court does not believe he would have acted any differently had a warning sign been present.
"The attorneys for plaintiff called a Mr. James M. Todd who testified with respect to the feasibility of placing a guard on the machine which would prevent an accident such as happened to Albert. This gentleman was possessed of a most distinguished and illustrious carrer to be sure; however, he had no experience whatever with sugar cane harvesters and his testimony is bound to give way to that of Mr. Pugh, a leader in the field. Mr. Pugh's reasons for not putting a guard on the machine have *215 been set out above. They are reasonable and understandable. It would be ridiculous to require a manufacturer in the name of safety to destroy the usefulness of his machine and his failure to render it inoperable cannot be termed negligence. For these reasons the plaintiff's suit against the manufacturer and its insurer will be dismissed."
For the foregoing reasons, the judgment of the lower court is affirmed.
The plaintiff is to pay all costs incurred herein.
Affirmed.