GULOTTA, Judge.
In this appeal the issue is whether South Central Bell Telephone Company is the “statutory employer” of Don Thompson entitled to a dismissal by summary judgment of Thompson’s tort suit for injuries sustained in a job-related accident.
At the time of his accident, Thompson was employed by Cifers Construction Company, Inc., which was under contract with South Central Bell to install underground, plastic conduit that would ultimately encase telephone wires running to a new office development on Canal Street in the City of New Orleans. Thompson was injured when the jackhammer he was operating struck an underground electrical cable owned by New Orleans Public Service, Inc. (NOPSI). Suit was directed against NOPSI, South Central Bell, and Surveys, Inc., an engineering firm that had drawn a map of underground utility lines in the area. Surveys, Inc. then third partied South Central Bell. United States Fidelity and Guaranty Company, Ci-fers’ workmen’s compensation insurer, intervened, claiming reimbursement for compensation and medical expenses paid to Thompson.
Based on the grounds that South Central Bell was the statutory employer of Thompson under LSA-R.S. 23:1061[1] and therefore immune from tort liability pursuant to LSA-R.S. 23:1032,[2] the trial judge by summary judgment dismissed the original and third party petitions, as well as the intervention filed against Bell. Plaintiff and third party plaintiff have appealed.[3] We affirm.
Plaintiff contends the trial judge erred in granting the summary judgment since the affidavit of a South Central Bell employee supporting the motion was legally insufficient in that it consisted merely of concluso-ry statements and did not affirmatively show that the affiant had personal knowledge of his statements as required by LSA— *802 C.C.P. Art. 967.[4] Thompson further argues that South Central Bell’s status as a statutory employer hinges on a factual question whether the excavation and the laying of the conduit was a part of the telephone company’s regular trade, business or occupation. Concerning this issue, plaintiff contends the work performed by Cifers was “new construction” outside of South Central Bell’s regular business. Thompson further claims that LSA-R.S. 23:1032 denies to him access to courts as mandated in LSA-Const. Art. 1, § 22.[5]
Surveys, Inc. also contends that the telephone company’s status as a statutory employer is an unresolved factual question and that the work performed by Cifers involved construction of a new facility that was not part of the phone company’s business. Surveys argues that South Central Bell is a “service” rather than a “construction” company and that it merely installs, operates, and maintains telephone lines and equipment rather than constructing or burying the plastic conduit encasing them.
Summary judgment is granted only when the pleadings, depositions on file, answers to interrogatories and any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C. C.P. Art. 966; Chaisson v. Domingue, 372 So.2d 1225 (La.1979); Davis v. Copeland Enterprises, Inc., 390 So.2d 891 (La.1980). A party seeking summary judgment has the burden of showing the absence of any materially factual issue; and any doubt must be resolved in favor of a trial on the merits. Chaisson v. Domingue, supra.
The issue whether work performed by a contractor is part of the principal’s business, within the meaning of LSA-R.S. 23:1061, is a factual one and, therefore, summary judgment procedure is seldom appropriate in such cases. McMoris v. Sheppard, 315 So.2d 342 (La.App. 4th Cir. 1975). In appropriate cases of this sort, however, summary judgment has been granted. See Fontenot v. Andrus Homes, Inc., 391 So.2d 42 (La.App. 3rd Cir. 1980) and the cases cited therein. For summary judgment to be granted, it must appear certain that the work undertaken by the injured employee’s actual employer was part of defendant’s trade, business or occupation, or was work which it had contracted to perform. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981).
J. A. Cothern averred in his affidavit that he was the Divisions Manager for South Central Bell; that the affidavit was based upon his personal knowledge, information and belief; that the trade, business and occupation of South Central Bell is “providing a public utility telephone service to subscribers”; and that “an integral and necessary part of this trade, business or occupation is the construction and maintenance of both underground and above ground facilities and telephone transmission lines . .. . ” He averred that the breaking of the concrete and the digging of underground pathways for the laying of the conduit performed by Thompson as an employee of Cifers “was absolutely necessary and essential in order to provide telephone service.” According to Cothern, South Central Bell chose to contract out the work set forth in the Cifers contract even though the work could be performed by the telephone company with its own equipment and employees in its construction department.
In deposition, Joseph H. Baudot, manager of the construction department of South *803 Central Bell in the central business district, where the accident occurred, stated that the telephone company had issued “construction drawings” to Cifers. He further stated that the work of tearing up streets and installing the conduit for the cable is “contracted out.” According to Baudot, South Central Bell has an employee at the project site at various times to see that the excavator’s work is done in conformity with the telephone company’s practices and specifications.
James Perot, Jr., project engineer for South Central Bell at the time of the accident, designed the conduit involved from base drawings designed by Surveys, Inc. He stated, in deposition, that telephone company construction employees do not lay conduit.
The trial court also had the benefit of the deposition of Jimmie Billiot, Cifers’ supervisor on the job at the time of the accident. It was his job to make sure the conduit was laid properly and that the trench was in the right place according to the drawings supplied by South Central Bell. He testified that he had received a set of the drawings from the telephone company’s contract supervisor and used them on the job.
At the outset, we reject plaintiff’s contention that J. A. Cothern’s affidavit in support of the motion for summary judgment was legally insufficient.
It is true that an affidavit supporting or opposing a motion for summary judgment must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify concerning the matters stated therein. LSA-C.C.P. Art. 967, supra; Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978). It is also true that a mere conclusory statement that the affiant has personal knowledge of the facts set forth in the affidavit will not suffice.
However, in our case, the affiant, J. A. Cothern, testified that he was South Central Bell’s Division Staff Manager, that he made statements based on his own personal knowledge, information and belief, and that he had been employed by South Central Bell since 1956 and had held his present position since April, 1977. These factual statements concerning his capacity and employment history with the telephone company affirmatively showed that he was competent to testify that South Central Bell’s business was that of providing telephone services to subscribers in the City of New Orleans and that an integral part of this business was the construction and maintenance of underground and above ground telephone transmission lines.
A copy of the contract between South Central Bell and Cifers is annexed to the affidavit. Moreover, the depositions of other telephone company employees support Cothern’s statements and supplement his affidavit. Under these circumstances, Cothern’s personal knowledge of the facts was sufficiently established and we conclude, as did the trial judge, that the affidavit meets the requirements of LSA-C.C.P. Art. 967.
The primary question with which we are confronted is whether the affidavit and depositions establish that South Central Bell is plaintiff’s statutory employer as a matter of law. There exists no genuine issue of material fact. No countervailing affidavits were filed and the facts set forth in the affidavit and depositions are undisputed.
A principal is considered the employer of a contractor’s employees engaged in work that is part of the regular business of the principal. Barnes v. Sun Oil Co., supra; Fontenot v. Andrus Homes, Inc., supra. This test for “statutory employment” has been held to consist of four essential elements: 1) a relationship of principal — contractor; 2) a contract between the principal and the contractor for the execution by the contractor of the whole or any part of work being undertaken by the principal; 3) “work” under the contract that is part of the principal’s trade, business or occupation; and, 4) injury to the employee while engaged in the execution of this “work”. Vincent v. Ryder Enterprises, Inc., 352 So.2d 1061 (La.App. 3rd Cir. 1977). It is *804 clear that South Central Bell’s regular trade, business or occupation is that of providing telephone service to subscribers. It is also clear that a necessary part of this business is the construction and maintenance of underground telephone transmission lines. The laying of conduit to encase the underground transmission cables is obviously an essential and integral part of the telephone company’s business.
The mere fact that South Central Bell does not do the excavation or the laying of the conduit itself with its own employees, but rather chooses to contract that portion of the work out does not prevent the labor from being part of its regular business. See Barnes v. Sun Oil Co., supra. As we held in Gray v. Louisiana Power and Light Company, 247 So.2d 137 (La.App. 4th Cir. 1971), writ refused, 259 La. 59, 249 So.2d 202 (1971), an electrical utility company’s decision to contract with another company for the construction of foundations for towers supporting overhead transmission lines did not preclude the electric company from being a “statutory employer” of the contractor’s employee where the utility was authorized to manufacture and produce electricity and the means to transmit it to its users.
We are aware of various cases holding that construction of a “new facility” is not part of the trade, business or occupation of the concern who is to use the facility. In Reeves v. Louisiana and Arkansas Railway Company, 282 So.2d 503 (La.1973), the construction of a “coking unit” was held not to be the regular business of the owner and operator of an oil refinery and chemical plant where it was not the owner’s business to engage in new construction of this type or magnitude and it had never designed a coking unit or any comparable plant. See also, Waller v. Farmland Industries, Inc., 392 So.2d 1099 (La.App. 3rd Cir. 1980) and the cases cited therein. Likewise, a major reconversion of one type of alcohol production facility to another type has been held not to be part of the regular business of a company where it did not regularly so convert the facilities of its chemical plant. See Blount v. Exxon Corp., 395 So.2d 355 (La.App. 1st Cir. 1981).
The excavation of a street and laying of telephone conduit in our case, however, is not a “new construction” within the meaning of the cited cases. Ours is not a case where a new plant is being constructed en toto for the principal or where the construction is not part of the principal’s regular business. Moreover, the telephone company did not rely wholly on the expertise of the contractor to design and construct the system. On the contrary, South Central Bell designed the conduit, drafted the excavation contract, and furnished Cifers with plans, specifications and materials, including the conduit, for performance of the work.[7] The aforementioned cases are therefore distinguishable.
Under these circumstances, we conclude Thompson was injured while performing contractual work that was part of South Central Bell’s regular business. Summary judgment was therefore proper since the telephone company, as Thompson’s “statutory employer”, was immune from tort liability.
Finally, we reject the argument that the statutory employer defense is un *805 constitutional because the plaintiff is deprived of an adequate remedy for injuries allegedly resulting from South Central Bell’s negligence. LSA-R.S. 23:1032, the exclusive remedy provision of the Workmen’s Compensation Law, has been held not to violate LSA-Const. Art. 1, § 22, supra. See Branch v. Aetna Cas. & Sur. Co., 370 So.2d 1270 (La.App. 3rd Cir. 1979).
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.

.LSA-R.S. 23:1061 reads as follows:
“§ 1061. Principal contractors; liability Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.”

. LSA-R.S. 23:1032 reads as follows, in pertinent part:
“§ 1032. Exclusiveness of rights and remedies; employer’s liability to prosecution under other laws.
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word “principal” shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.”

. U.S.F. & G. has not appealed the dismissal of its claim in intervention.

. LSA-C.C.P. Art. 967 reads as follows, in pertinent part:
“Art. 967. Same; affidavits
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.”

. LSA-Const., Art. 1, § 22 reads as follows: “§ 22. Access to Courts
Section 22. All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.”

. Sections (a) and (b) of Article 5 of the contract between South Central Bell and Cifers provide:
“ARTICLE 5. MATERIALS, LABOR AND APPLIANCES
(a) The Contractor will furnish all materials (except materials to be furnished by the Telephone Company as provided for in Section
(b) of this Article 5), cartage, tools, implements and appliances, and do and perform all work required for the full performance of everything shown, described or reasonably implied by applicable general plans, drawings and specifications of the Telephone Company.
(b) The Telephone Company will furnish to the Contractor at such times as will not delay the Contractor in his work, all cable, poles, anchors, conduit, pipe bends, castings, couplings, manhole frames and covers, U-guards, pulling-in irons, creosoted plank and any other miscellaneous hardware or minor supplies associated with above materials, and the Contractor shall receipt for and be responsible for said materials from date of delivery.”